Pages 1 - 17

United States District Court

Northern District of California

Before The Honorable Nathanael Cousins

| | |
|---|---|
| Century Aluminum Company, et al.,<br><br>       Plaintiff,<br><br>  vs.<br><br>AGCS Marine Insurance Company,<br><br>       Defendant.<br>_____ | No. C11-2514 NC |

San Francisco, California
Wednesday, September 5, 2012

**Reporter's Transcript Of Proceedings**

**Appearances**:

For Plaintiff:          Jones Day
                        555 California Street, 26th Floor
                        San Francisco, California, 94104
                   **By: Amanda L. Schapel, Esquire**

For Defendant:          Long & Levit, LLP
                        465 California Street, 5th Floor
                        San Francisco, California  94104
                   **By: Glen Robert Olson, Esquire**

*Reported By:*          *Sahar Bartlett, RPR, CSR No. 12963*
                        *Official Reporter, U.S. District Court*
                        *For the Northern District of California*

(Computerized Transcription By Eclipse)

| | |
|---|---|
| 1 | **Wednesday, September 5, 2012**                              **10:00 a.m.** |
| 2 | **P R O C E E D I N G S** |
| 3 | **THE CLERK:** Calling Civil 11-02514, Century Aluminum |
| 4 | Company, et al. versus AGCS Insurance Company. |
| 5 | Counsel, please state your appearances for the |
| 6 | record. |
| 7 | **MS. SCHAPEL:** Amanda Schapel from Jones Day for |
| 8 | plaintiffs Nordural. |
| 9 | **THE COURT:** Good morning. |
| 10 | **MS. SCHAPEL:** Good morning. |
| 11 | **MR. OLSON:** And good morning, Your Honor. This is |
| 12 | Glen Olson from Long & Levit on behalf of defendant, AGCS |
| 13 | Marine Company. |
| 14 | **THE COURT:** Good morning, Mr. Olson. |
| 15 | I know there was a request a few moments ago to have |
| 16 | additional counsel on the phone, and my usual practice is not |
| 17 | to have folks on the phone unless there is an advance request |
| 18 | to do that. And here we have just got a few status things to |
| 19 | touch on on discovery, so I'm just going to do it with the |
| 20 | people who are here. And if there is some particular necessity |
| 21 | to consult with someone who is not here, we can take a break to |
| 22 | do that. |
| 23 | For the correctness of communication, I -- |
| 24 | Mr. Olson, you know what is going on in the case, so I'm very |
| 25 | comfortable -- |

1        **MR. OLSON:** Understood, Your Honor.

2        **THE COURT:** We've got three things I know about to
3   touch on. And any others that I don't know about, I'll rely
4   upon you to advise me about and to give us guideposts.

5        We've got three depositions that I ordered to take
6   place in the near future, and I wanted to touch base with you
7   as to how those are being scheduled and if you need my
8   involvement in the scheduling and location, deciding about
9   that.

10       AGCS has asked to clarify, and I think it's also a
11  motion to reconsider, some aspects of a ruling that came out on
12  August 23rd concerning certain interrogatory and discovery
13  requests.

14       And then finally, I ordered AGCS to submit what are
15  labeled by Century as "hot docs" to produce in camera for
16  further review of those documents, and I wanted to talk about
17  that.

18       So those are the three things on my checklist.
19  Let's start with the first one, which is the scheduling of the
20  Inouye and Zacharides's deposition. What's the status of that?

21       **MS. SCHAPEL:** We have two depositions scheduled for
22  next week. We haven't scheduled any further depositions, but I
23  am not aware of any issues with deposition scheduling.

24       **THE COURT:** All right. Which are the ones that are
25  scheduled?

1           **MS. SCHAPEL:**  Klein and Zacharides are scheduled for
2    next week.
3           **MR. OLSON:**  We have Dan Klein for September 11th, I
4    believe, Your Honor, and Nancy Zacharides for September 12th.
5           And I did have a question about the Inouye
6    deposition, which I understood that the hot doc submission was
7    relative to that and we didn't understand the Court to have
8    ordered yet, that she be produced.  If that's correct, we will
9    proceed to, you know, have discussions about that scheduling.
10   But I thought that was relevant to that third issue the Court
11   set forth.
12          **THE COURT:**  Well, let's see what I ordered.  I
13   thought that I --
14          **MS. SCHAPEL:**  The relevant order I think is 216.
15          **THE COURT:**  All right.  No, I granted their Reply 28
16   request to take the deposition of Inouye and Cole.  So I am
17   saying that the depositions are going to take place to be
18   scheduled in 30 days.  As to whether there should be additional
19   documents produced before then, that's what I wanted to
20   review --
21          **MR. OLSON:**  Okay.
22          **THE COURT:**  -- in camera.
23          You also are in a period of expert discovery, I
24   know.  How are you proceeding on that?
25          **MR. OLSON:**  We are contacting our experts, Your

1   Honor, to get dates and probably talking this week about
2   scheduling, because I know we are coming up on that day.
3               **THE COURT:**  Any issues?
4               **MS. SCHAPEL:**  We do have one issue, which is that we
5   have just found out yesterday that apparently due to some
6   health issue, Mr. Nicoletti is unavailable for the next several
7   weeks.  And he has indicated to us -- correct me if I'm wrong
8   -- that this makes it difficult for expert deposition
9   scheduling.
10              We have been trying to push on getting some dates
11  set and haven't yet heard any availability about when the
12  experts are available.  We are ready to go, but we don't know
13  what the issue is with Mr. Nicoletti's unavailability and how
14  that will affect expert discovery.
15              **MR. OLSON:**  Mr. Nicoletti actually had eye surgery
16  on Friday.  He has a torn retina, so he thinks he is going to
17  be out of commission for six weeks.  So we are trying to work
18  around that as best we can, but I don't know when he's going to
19  be back in the saddle and able to participate.
20              And I understood co-counsel, you know, to be
21  preparing some sort of application for the Court for some
22  continuance.
23              **THE COURT:**  So we'll wait to address that until we
24  have seen it.  I guess I'll observe that there are many other
25  attorneys who have appeared for AGCS in the case, so that is

1  something the Court will have to consider in addressing that
2  request.
3          **MS. SCHAPEL:** And --
4          **THE COURT:** To kind of the third topic, which are
5  the under seal -- not under seal, the redacted materials, I
6  haven't seen them.
7          Do you know, Mr. Olson, if they were submitted to
8  the Court yesterday?
9          **MR. OLSON:** I believe they were, Your Honor.
10         **THE COURT:** All right.  They may be in transit
11 between the Clerk's Office and my chambers.  But I haven't
12 physically taken possession of them yet, so I'm not in a
13 possession to address them yet.
14         I assume that you didn't copy because they weren't
15 intended for you, so you can't contribute anything.  But you
16 think, Mr. Olson, they were submitted yesterday?
17         **MR. OLSON:** Your Honor, are these the documents that
18 we were talking about from the August 29th, 2012, submission,
19 or is this another set of documents?
20         **THE COURT:** In Order 216, I directed AGCS to submit
21 by yesterday at noon for an in-camera review all redacted
22 documents from Century's submission.  Do you know if that was
23 done?
24         **MR. OLSON:** I believe that we previously had done
25 that, Your Honor, but I will check and get it done today if,

1  you know, it hasn't been done.  My understanding is that we had
2  submitted those.
3           **THE COURT:**  What I want, and maybe it's unclear, I
4  want to see -- I want to see all the documents in their
5  unredacted form.  I want to see every one of the original
6  documents from that set.  Based on what I reviewed so far, I
7  have concerns about the quality of the redactions.
8           So what I received before was the redacted versions.
9  And I made certain rulings from those, but I want to do a
10 further and deeper inquiry into the quality of all the
11 redactions in that set.  And it's a subset of the total number
12 of documents that are in dispute in the case, but I want to see
13 those particular redactions.
14          **MR. OLSON:**  Okay.
15          **THE COURT:**  When I say I already have -- I've seen
16 the redactions, I want to see what is underneath the
17 redactions.
18          **MR. OLSON:**  Okay.
19          **THE COURT:**  So if that hasn't been done, it needs to
20 be done as quickly as possible.  But since I haven't seen them,
21 I don't know for sure.  And if you're not sure --
22          **MR. OLSON:**  I apologize, Your Honor, if that slipped
23 by.  I thought we had done that already.  And so we will get
24 that to you today or tomorrow morning, at the latest.
25          **THE COURT:**  Tomorrow will be fine.

1       And to be clear, it's not the redactions I'm looking
2  for, it's the actual preredacted documents.
3       And the basis for this order is that as we litigated
4  this a few -- last week and the week before, Century had some
5  criticisms of the redactions.  I addressed a number of those
6  through my prior order, but I'm continuing to look at the
7  quality of the redactions by doing this in-camera review.
8  That's the purpose for me doing it.
9       So we won't touch on this issue any further because
10 I haven't seen them and you are not prepared to talk about it
11 further, but once I've reviewed them, I may have you back here
12 for a further discussion.
13          **MR. OLSON:**  Okay.
14          **THE COURT:**  All right.  Now on to the -- so to go
15 back on Inouye, yes, I've ordered Inouye to be deposed.  There
16 is already documents that have been produced in August that are
17 the basis for that deposition.  And I think there is -- you can
18 go ahead with them now.  You might prefer to wait until you've
19 gotten maybe a further installment of these documents that are
20 in dispute.  I'll leave it to you to decide if it's something
21 you want to wait on and how you want to order it.
22          You've already got some stuff happening next week,
23 but I want you to do it in the next -- I think I ordered in the
24 next 30 days, so you need to get on the schedule soon.
25          All right.  Then finally is the motion for

1  clarification. And I'm going to take it in the order of AGCS's
2  request, which is Document 210. I also received the
3  plaintiff's response to that, and it goes point by point, so
4  very helpful to address it that way.
5          I'm going to jump -- there is one point that Century
6  concedes, so that's something which I'm glad you are able to
7  reach some agreement on, and that is as to Document Request
8  No. 4, Century agreed that its third request for Production
9  No. 4 might be limited to AGCS's policies and endorsements.
10 And since Century is agreeing to that limitation, then no
11 further clarification is required on that so that essentially
12 AGCS's request for clarification on that one is clarified by
13 Century's response.
14         As to the remainder of the requests, my order is
15 going to be to deny the requests for further clarification or
16 limitation. So going in order as to the interrogatories,
17 Nos. 10 and 14, the question is whether the Court intended to
18 limit the interrogatories to AGCS policies covering
19 transformers, and, no, the Court did not intend and does not
20 further limit the response to that -- those interrogatories.
21         As to document requests, we already talked about
22 No. 4. As to -- we are talking about 1, 2, 3, and 4, whether
23 the Court intended to limit those requests to AGCS only, the
24 answer is no.
25         And finally, as to Century's fourth request for

```
 1  Production Nos. 5 and 6, whether the Court intended to limit
 2  its order to AGCS or whether it should extend to other alliance
 3  companies, the answer is, it should extend to other alliance
 4  companies.  So the Court is not going to further limit those
 5  responses.
 6          I will do a very brief order confirming that so you
 7  have it in writing, but that's how the Court responds on that
 8  issue.
 9          MR. OLSON:  Yeah.
10          Your Honor, can I address that just briefly?
11          THE COURT:  You may.
12          MR. OLSON:  What's going to happen here from the
13  standpoint of AGCS is, we have a care, custody, and control
14  problem.  These are not our documents.  These are documents
15  that belong to a German company that has, you know, privilege
16  and confidentiality concerns, perhaps, with its customers, such
17  as ABB, and they are not actually in our possession.
18          So the ability of AGCS to produce these is going to
19  depend upon those other companies voluntarily producing them to
20  us.  And I can't represent to the Court that they are going to
21  do that, particularly if they have confidentiality agreements
22  with their customers.
23          That's beyond the burden.  That was the reason,
24  another reason, for our objection that we are now expanding
25  discovery at the tail end of the case to companies that are
```

1  actually not named defendants in the case.
2          **THE COURT:** It's not actually an objection to say,
3  we have produced all documents in our care, possession,
4  custody, and control if you are producing all documents that
5  are in your possession, custody, and control.  That is not a
6  burden objection.  That's a -- it's not actually an objection,
7  it's -- you might clarify and provide that information to the
8  opposition.  It's different than burden.
9          I mean, burden is, we have these documents and it's
10 going to take us a long time to filter them and find them.
11 Saying we don't have documents is just a basic response, not an
12 objection at all.
13         So, there have been prior burden objections made in
14 the case about affiliated companies, and I'm not saying that
15 you to have produce documents that are not in your care,
16 custody and control, but in responding to interrogatories and
17 document requests, you do need to validate that you have
18 produced information and documents that are in your care,
19 custody, and control.
20         **MR. OLSON:** That's actually helpful, Your Honor,
21 because what we are going to do is make the requests to the
22 companies to produce them.  But we don't know whether they are
23 going to provide them to us and we can, in turn, provide them
24 in response to the Court order.  But we will make the request
25 for --

1          ***THE COURT:***  And that might lead Century to make a
2    further discovery request.
3          And there are other modes of discovery which you
4    have already taken in this case.  The purpose -- and part of
5    having an interrogatory be verified is that you have a person
6    who is certifying what is, you know, what you've done and where
7    you've searched.  And when you get to the trial stage in this
8    case, if you get to the trial stage in this case, then there
9    can be some examination under oath as to where stuff came from
10   and what was produced and what wasn't.
11         ***MR. OLSON:***  Right.
12         ***THE COURT:***  But part of our mission here before the
13   close of discovery is to get on the record what has taken
14   place, what was searched and what was not searched, and avoid
15   any miscommunication about where you've searched for things.
16         ***MR. OLSON:***  Okay, understood.
17         ***THE COURT:***  So if your response to these particular
18   discovery requests is, we have produced all information and all
19   documents in our care, custody, and control, that needs to be
20   very clear to Century that you have done that.
21         If it's -- if your response is, we object because
22   it's burdensome to do this search, well, I'm overriding that
23   objection and ordering you to produce it.
24         ***MR. OLSON:***  All right.
25         ***THE COURT:***  Ms. Schapel, any further clarification

```
 1   needed from your perspective on those things?
 2           MS. SCHAPEL:  No.  We absolutely agree with Your
 3   Honor's analysis.  And if there are no documents that are in
 4   their actual control, that's fine, but we don't have that
 5   answer yet, so...
 6           THE COURT:  Very well.
 7           Anything else we need to address today?
 8           MR. OLSON:  Yes.  I would like to raise one more
 9   issue, Your Honor -- I say "one more," and perhaps it's more
10   than one, but we are in the process of producing the documents
11   that the Court had ordered, or at least organizing the
12   documents the Court ordered, to be produced pursuant to the
13   privilege waiver motion.
14           THE COURT:  Yes.
15           MR. OLSON:  And there are documents that the Court
16   has listed specifically in its order, and probably documents
17   beyond that specific listing, that are multiple-issue
18   documents.  So we just wanted to clarify that the Court has
19   ordered the weather investigation documents from the Robb
20   essentially the Robb communication to be produced.  And we
21   would hope that we can redact other issues that are in those
22   documents producing the weather information.
23           THE COURT:  Give me an example of what -- I'm not
24   asking you to waive some privilege, but of the type of
25   information that you think would be redactable.
```

1          **MR. OLSON:**  Yes.  I mean, for instance, Mr. Robb may
2  be interacting with the company on the weather investigations,
3  here is what we found out from a particular weather expert or
4  consultant.  But he may address other issues like packaging or
5  other issues relevant to the claim origin of the transformer,
6  manufacturer of the transformer.  Those are very general
7  categories, Your Honor, because I don't intend to waive
8  privilege on that.
9          **THE COURT:**  Do you have the documents right now that
10 raise this issue?
11         **MR. OLSON:**  We do have some documents from the ones
12 that the Court has listed in this order.  I don't have them
13 with me now.  We could submit them.  I don't know if that would
14 be helpful to the Court, but we could make a submission in
15 camera.
16         **THE COURT:**  I'll tell you, my feeling is that the
17 documents should be produced in their totality.  But if you've
18 got something you can give me today to look at, I'll look at it
19 very quickly along with the other things which I've ordered you
20 to produce.
21         But the order was, for those particular documents,
22 and I identified by number, and for any others on the topic of
23 weather, that they should be produced and that the waiver is as
24 to components of those communications.
25         And oftentimes the context of what is going on in

1  the communications is important for the entire message.  But
2  I'll consider if you can get it to me in the next 24 hours.
3          **MR. OLSON:**  I would like the opportunity to make
4  that submission.  And perhaps when I do the other in-camera
5  document submission, I could do that, Your Honor.
6          **THE COURT:**  You can do that.  And please specify
7  which is which so that the piles don't get mixed.
8          **MR. OLSON:**  We'll categorized them, I promise.
9          **THE COURT:**  Anything else?
10         **MR. OLSON:**  No, I think that's actually it.  I did
11 want to call to the Court's attention Mr. Nicoletti's
12 condition.
13         **THE COURT:**  Very good.  I appreciate that.
14         **MR. OLSON:**  We'll be submitting something.
15         **THE COURT:**  Hope he recovers quickly.
16         Ms. Schapel, anything further?
17         **MS. SCHAPEL:**  Yes, also regarding the privilege
18 motion.
19         Although our discussions have focused on Robb and
20 weather documents, there are several other categories that we
21 haven't addressed:  The subrogation documents, the reserves,
22 and the documents that don't involve any attorneys.
23         And especially given what we have submitted and what
24 are you going to be reviewing in camera in terms of the
25 redactions of documents that don't involve attorneys, we are

```
 1   particularly concerned about those continued withholding of
 2   documents which don't appear to us to be privileged.
 3              THE COURT:  All right.  And in part, those are
 4   issues I will be looking at when I review the in-camera
 5   materials to see if at least my belief that some of those
 6   topics might be addressed -- I don't know, I'm speculating as
 7   to what might be underneath the redactions.  So I appreciate
 8   you bringing that back up.  It's something that I will look at
 9   further when review those materials.
10              MS. SCHAPEL:  Thank you.
11              THE COURT:  All right.  Anything further?
12              MR. OLSON:  I think that's it.
13              THE COURT:  I'm not going to set a further date for
14   you to come back and see me now unless you would like me to,
15   unless you know there is a point in your schedule a week from
16   today or two weeks from today that you say you would like to
17   come back.
18              What are your feelings about scheduling something
19   now versus --
20              MR. OLSON:  I think given the deposition schedule,
21   it's going to be a little tough, I would think, to set
22   something.  I don't know what opposing counsel's feelings are
23   on that.
24              MS. SCHAPEL:  We just have the two depositions
25   scheduled next week.  If you would like to set something, we
```

1  certainly could set it now and then schedule the remaining
2  depositions around that.
3           So we have the 11th and 12th for a deposition --
4           **THE COURT:**  Let's set a control -- I think I'll set
5  the 19th as a further date for you.  Let's do 10:00 o'clock
6  just for further status on discovery, because it may be by then
7  AGCS has filed its motion pertaining to Mr. Nicoletti, and that
8  needs to be resolved.  It might be resolved before then, but
9  you've got some expert discovery going on, these materials
10 which I will review in camera.
11          So I think there is enough things that if it turns
12 out we don't need to meet again, I'll cancel that.  If you
13 agree we don't need to have it, you can submit a stipulation.
14 But at least as far as scheduling, we have the other things you
15 are doing in this case, I think it's helpful to have a date.
16 So September 19th, 10:00 o'clock, for discovery status.
17          All right.  Thank you very much.
18          **MR. OLSON:**  Thank you, Your Honor.
19          **MS. SCHAPEL:**  Thank you, Your Honor.
20               **(Whereupon, the proceedings adjourned at**
21               **10:32 a.m.)**
22
23                        ---o0o---
24
25

*Sahar Bartlett, C.S.R. No. 12963, RPR*
*Official Court Reporter, U.S. District Court*
*(415) 626-6060*

**CERTIFICATE OF REPORTER**

I, Sahar Bartlett, Official Court Reporter for the United States Court, Northern District of California, hereby certify that the foregoing proceedings were reported by me, a certified shorthand reporter, and were thereafter transcribed under my direction into typewriting; that the foregoing is a full, complete and true record of said proceedings as bound by me at the time of filing. The validity of the reporter's certification of said transcript may be void upon disassembly and/or removal from the court file.

/s/ Sahar Bartlett

Sahar Bartlett, RPR, CSR No. 12963

United States Court Reporter

Friday, September 14, 2012